Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7861 | **DATE** | 2/13/2002 |
| **CASE TITLE** | ILLINOIS DEPT. OF REVENUE vs. ENVIRODYNE INDUSTRIES, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The bankruptcy court's order of September 4, 2001 denying the Illinois Department of Revenue's claim to additional tax liabilities, interest, and penalties is affirmed. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | FEB 15 2002 | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | 18 |
| ✓ | Mail AO 450 form. | | |
| ✓ | Copy to bankruptcy judge. | U.S. DISTRICT COURT CLERK | 2/13/2002 date mailed notice |
| SB | courtroom deputy's initials | 02 FEB 14 PM 4:35 | CB |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ILLINOIS DEPARTMENT OF )
REVENUE )
 )
 ) No. 01 C 7861
 Plaintiff, )
 ) Suzanne B. Conlon, Judge
v. )
 )
ENVIRODYNE INDUSTRIES, INC. )
 )
 Defendant. )

DOCKETED
FEB 1 5 2002

## MEMORANDUM OPINION AND ORDER

The Illinois Department of Revenue ("the IDR") appeals the denial of a proof of claim against Envirodyne Industries ("Envirodyne") and its subsidiaries (collectively "debtors")[1]. The IDR refused to recognize carry-forward losses attributed to debtors as part of a unitary business group under Illinois law that would offset the IDR's asserted claims. The IDR contended a subset of Envirodyne subsidiaries – EDC, Inc., WSC Shipping, Inc., Wisconsin Steel Co., WSC Corp., and WSC Sales, Inc. (collectively "Wisconsin Steel") – could not be considered a unitary business group with Envirodyne under 35 ILCS § 5/1501(a)(27). The bankruptcy court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(B). The bankruptcy court rejected the IDR's claim and determined debtors were not liable for 1988 and 1989 tax liabilities, interest, and penalties totaling $1.5 million. The IDR appeals pursuant to 28 U.S.C. § 158(a).

---

[1] The debtors consist of Envirodyne, Sandusky Plastics, Inc., Sandusky Plastics of Delaware, Inc., Viskase Corp., Viskase Holding Corp., Viskase Sales Corp., and Clear Shield National, Inc.

1



## BACKGROUND

The relevant facts are undisputed.[2] In August 1977, Envirodyne, through its wholly-owned subsidiary, Envirodyne Stock Company, established EDC Holding Co. to acquire Wisconsin Steel's assets. Envirodyne pledged assets and stock as security for notes issued to International Harvester, Wisconsin Steel's former owner. After completing the acquisition, Envirodyne organized its operating subsidiaries into two divisions – the Steel Mining division (consisting of Wisconsin Steel companies) and the Engineering and Development division (consisting of non-Wisconsin Steel companies).

George Sealy and Ronald Linde served as Wisconsin Steel and Envirodyne's directors. Envirodyne recruited a new management team for Wisconsin Steel. Further, Envirodyne oversaw all major personnel decisions, and appointed officers and directors to serve on Wisconsin Steel's board. Envirodyne participated in interviews for new hires. Envirodyne recruited James Morrill to serve as Wisconsin Steel's president and Michael Lyon to serve as vice-president and general counsel. Lyon regularly reported to Ronald Linde at Envirodyne. Envirodyne's officers determined compensation packages for Wisconsin Steel's new management team. Envirodyne's chief financial officer oversaw Wisconsin Steel's accounts and conducted internal audits. Envirodyne and Wisconsin Steel used the same legal and accounting firms. Maxine Linde, an Envirodyne officer, recorded minutes at Wisconsin Steel board meetings from 1977 to 1989. Envirodyne oversaw and approved Wisconsin Steel's budget and all significant purchasing decisions.

---

[2] The parties do not contest the bankruptcy court's recitation of the undisputed facts. Indeed, the parties stipulated to all relevant facts in this action. *See* Stipulation of Facts, Tr., Vol. 1, Doc. No. 1698. Consequently, all relevant facts are taken from the bankruptcy court's statement of facts and the parties' stipulations.

Envirodyne and Wisconsin Steel did not have a common cash management system and its funds were not commingled. Envirodyne and Wisconsin Steel did not engage in joint marketing or advertising. Nor did they have a coordinated purchasing program because each subsidiary had its own purchasing department. However, Envirodyne reviewed and approved all major Wisconsin Steel purchases. George Sealy, Envirodyne's president, provided marketing services for Wisconsin Steel. Finally, Wisconsin Steel had interactions with other Envirodyne subsidiaries. Envirodyne Planning provided consulting and technology services related to charting project schedules for manufacturing processes. Envirosonics developed technology to assist Wisconsin Steel, which Wisconsin Steel funded in the amount of $3.9 million. Envirodyne's engineers reviewed wastewater management programs for Wisconsin Steel.

In March 1980, Maxine Linde, an Envirodyne director and officer, made the final decision to file a Chapter 11 bankruptcy petition for Wisconsin Steel. She selected Wisconsin Steel's bankruptcy counsel and provided consulting services. During bankruptcy proceedings, Wisconsin Steel and debtors shared Envirodyne's office space and stored their books and records at no cost. Envirodyne covered Wisconsin Steel under its insurance policies. Envirodyne provided legal and consulting services on Wisconsin Steel's litigation against International Harvesters. Stephen Schuster, Envirodyne's general counsel and Wisconsin Steel's director, was primarily responsible for the negotiation and implementation of Wisconsin Steel's reorganization plan. Envirodyne funded that plan in the amount of $ 2.7 million to enable the reorganization. Envirodyne filed consolidated tax returns, and Envirodyne's tax department provided accounting and tax services to Wisconsin Steel. In 1993, the IDR contested Envirodyne's 1988 and 1989 tax returns, claiming Envirodyne improperly included net carry-forward losses for Wisconsin Steel because Envirodyne and

Wisconsin Steel could not constitute a unitary business group.

## DISCUSSION

### I. Standard of Review

On an appeal from a bankruptcy court decision, a district court "may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. Review of the bankruptcy court's factual findings is subject to a clearly erroneous standard. Fed. R. Bankr. P. 8013; Fed. R. Civ. P. 52. Whether an entity falls within a unitary business group is generally a question of fact. *Citizens Utilities Co. v. Dept. of Revenue*, 111 Ill.2d 32, 39, 488 N.E.2d 984, 986 (1986). Where the facts are undisputed, the conclusion on the existence of a unitary business group is a matter of law. *Borden, Inc. v. Illinois Dept. of Revenue*, 295 Ill. App. 3d 1001, 1004, 692 N.E.2d 1335, 1338 (1st Dist. 1998). The court reviews the bankruptcy court's conclusions of law *de novo*. *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994); *see also In re Galvan*, No. 97 C 591, 1998 WL 246015, at *2 (N.D. Ill. Apr. 30, 1998) (where the facts are undisputed in a bankruptcy appeal, the court reviews *de novo*).

### II. Unitary Business Group under § 1501(a)(27)

The dispute on appeal turns on whether Envirodyne exercised strong centralized management over Wisconsin Steel for tax years 1988 and 1989. A state has the power to tax out-of-state activities of associated corporations by formula apportionment only when the corporations constitute a unitary business. *Container Corp. v. Franchise Tax Bd.*, 463 U.S. 159, 165-67 (1983). Under the Illinois Income Tax Act, 35 ILCS § 5/1501(a)(27) (1998) ("the Tax Act"), a unitary business group must satisfy a three-prong test: (1) the companies must be in common ownership; (2) the companies must be in the same general line of business; and (3) there must be functional integration through the

4

exercise of strong centralized management. *A.B. Dick Co. v. McGraw*, 287 Ill. App.3d 230, 232-33, 678 N.E.2d 1100, 1104 (4th Dist. 1997). The parties do not dispute the first prong. The bankruptcy court determined Wisconsin Steel and Envirodyne were in the same line of business, and they were a unitary business group under § 1501(a)(27). The IDR appeals the bankruptcy court's finding on the third-prong of the test.

Section 1501(a)(27) provides that a unitary business exists where: "the members are functionally integrated through the exercise of strong centralized management where, for example, authority over such matters as purchasing, financing, tax compliance, product line, personnel, marketing, and capital investment is not left to each member." 35 ILCS § 5/1501(a)(27). The factors enumerated in § 1501(a)(27) are "exemplary only and not exclusive." *Hormel Foods Corp. v. Zehnder*, 316 Ill. App. 3d 1200, 1209-10, 738 N.E.2d 145, 152 (1st Dist. 2000). A unitary business can be formed through the existence of functional integration or strong centralized management. *A.B. Dick*, 287 Ill. App. 3d at 233, 678 N.E.2d at 1102 ("wherever there is functional integration of operations there is also strong centralized management and vice versa"). To determine strong centralized management, the court must "examine the entire operation as a whole." *Hormel Foods Corp.*, 316 Ill. App. 3d at 1210, 738 N.E.2d at 153.

The bankruptcy court relied upon *Borden* and *A.B. Dick* in concluding that Envirodyne and Wisconsin Steel constituted a unitary business group. In *Borden*, the court determined Borden exercised strong centralized management over its subsidiaries. Borden's auditors monitored the subsidiaries' activities and accounting procedures; the companies filed consolidated financial reports; Borden prepared tax returns for its subsidiaries; the companies had a centralized cash management system; Borden approved all operating budgets and capital expenditures; Borden

5

appointed the subsidiaries' officers; and Borden provided tax and accounting services at cost or for no charge. *Borden*, 295 Ill. App. 3d at 1006-1007, 692 N.E.2d at 1339-40.

Similarly, in *A.B. Dick*, the court found a unitary business group. A.B. Dick's officers were actively involved in Videojet, A.B. Dick's subsidiary; A.B. Dick provided funding for Videojet's acquisition of another company; A.B. Dick approved Videojet's tax filings; A.B. Dick reviewed and approved all purchase requests over $500; A.B. Dick controlled the salaries of Videojet personnel, and A.B. Dick had final authority over the introduction and pricing of new Videojet products. *A.B. Dick*, 287 Ill. App. 3d at 99, 678 N.E.2d at 1107.

Various factors demonstrating Envirodyne's centralized control over Wisconsin Steel are analogous to those present in *A.B. Dick* and *Borden*. Envirodyne pledged stock as part of the Wisconsin Steel acquisition; Envirodyne recruited, engaged, and appointed Wisconsin Steel's officers and directors; Envirodyne assisted Wisconsin Steel to obtain financing; Envirodyne handled Wisconsin Steel's tax returns and provided accounting oversight and assistance; Envirodyne provided Wisconsin Steel free insurance coverage; Envirodyne and Wisconsin Steel shared office space, and Envirodyne provided office services and utilities at no cost; Envirodyne's officers were responsible for the negotiation and formation of Wisconsin Steel's reorganization plan; Envirodyne funded the reorganization plan; Envirodyne assumed liability for pension claims asserted by former Wisconsin Steel employees; and Envirodyne's officers were responsible for recording and keeping Wisconsin Steel's board minutes.

Significantly, in *A.B. Dick Co.*, the court found instructive that Videojet relied upon A.B. Dick for legal, insurance, and real estate services, and A.B. Dick provided assistance in purchasing, accounting, and personnel matters. *A.B. Dick*, 287 Ill. App. 3d at 240, 678 N.E.2d at 1106.

Similarly, Envirodyne provided insurance, tax, personnel, and accounting assistance to Wisconsin Steel. *See also Borden*, 295 Ill. App. 3d at 1007, 692 N.E.2d at 1339-40 ("Borden retained control over financing, tax compliance, and at least some aspects of purchasing, personnel and marketing"). Further, in *Borden*, the court relied upon Borden's appointment of officers to its subsidiaries, and the provision of centralized services at cost or without charge. *Id.* Envirodyne appointed Wisconsin Steel's directors and provided identical consulting services at no cost.

On appeal, the IDR asserts Envirodyne and Wisconsin Steel are not unitary because the companies are not financially integrated, and strong centralized management ceased to exist after Wisconsin Steel filed for bankruptcy in 1980. First, the IDR contends the lack of financial integration and commingling of funds between Envirodyne and Wisconsin Steel precludes a finding of a unitary business group under § 1501(a)(27). However, financial integration is only one method of demonstrating a flow of value between two companies in a unitary business group. A flow of value may exist in the form of transfer of information or staff because it provides economies of scale. *Citizens Utilities Co.*, 111 Ill.2d at 49, 488 N.E.2d at 991; *A.B. Dick*, 287 Ill. App. 3d at 238, 678 N.E.2d at 1106 (flow of value can consist of "many subtle and largely unquantifiable transfers of value"). Steven Schuster, Envirodyne's general counsel, was responsible for negotiation and implementation of Wisconsin Steel's reorganization plan. Envirodyne's officers provided legal and consulting advice on litigation against International Harvesters. Maxine Linde at Envirodyne selected Wisconsin Steel's bankruptcy counsel and assisted with the bankruptcy proceedings. Consequently, these factors establish a flow of value from Envirodyne to Wisconsin Steel through the transfer of information and staff.

Moreover, in *PPG Indus. Inc. v. Dept. of Revenue*, No. 99-2487, 2002 WL 113011 (Ill. App.

7

Ct., 1st Dist., Jan. 29, 2002), the court found a unitary business group in the absence of significant financial integration and commingling of funds.[3] In *PPG*, the court determined PPG and Oil & Gas, its subsidiary, were unitary because: Oil & Gas directors were PPG officers or employees; the Oil & Gas director of daily operations was a PPG employee; PPG paid Oil & Gas employees' salary; PPG provided accounting, legal, and tax services; PPG executed Oil & Gas contracts; and PPG approved and executed the final contract to sell Oil & Gas. *PPG Indus.*, 2002 WL 11301, at *6. The court concluded PPG's exercise of significant control over Oil & Gas resulted in a unitary business group under § 1501(a)(27). *Id.*

Similarly, Envirodyne's provision of tax and accounting services to Wisconsin Steel, the overlap in key personnel between the two companies, Envirodyne's provision of office space, storage of books and records, and assumption of pension fund liability demonstrate the same degree of involvement and control. Notably, PPG's final decision to sell Oil & Gas is similar to Envirodyne's final decision to file a bankruptcy petition for Wisconsin Steel. *Id.* And *PPG Indus.* found a unitary business group in the absence of significant financial integration and commingling of funds. Indeed, PPG's payment of Oil & Gas employees' salary and expenses is analogous to Envirodyne's investment of $2.7 million for Wisconsin Steel's reorganization plan and provision of utilities and office services at no cost. The existence of some financial involvement coupled with other factors of centralized control is sufficient to establish a unitary business group. The absence of total financial integration and common cash management is not dispositive. *See Hormel Foods*, 316 Ill. App. 3d at 1209-10; 738 N.E.2d at 152-53.

The IDR regulations bolsters this conclusion: "neither the existence of central management

---

[3] *PPG Indus.* was decided shortly after the parties completed briefing in this appeal.

authority, nor the exercise of that authority over any particular function (through centralized operations) is determinative itself; the entire operation of the group must be examined[.]" 86 Ill. Adm. Code. § 100.9700(g). Indeed, potential for control is relevant to the existence of a unitary business group. *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 177 n. 16 (1983); *Borden*, 295 Ill. App. 3d at 1009, 692 N.E.2d at 1341. In *Central Utilities*, the court emphasized that evidence of a "mere flow of funds arising out of a passive investment or a distinct business operation" is insufficient to form a unitary business group. *Central Utilities*, 111 Ill.2d at 47, 488 N.E.2d at 990. Consequently, the IDR's narrow interpretation of § 1501(a)(27) is contrary to *Borden, A.B. Dick, Hormel Foods, PPG Indus., Central Utilities* and the IDR regulations. *See also Caterpillar Tractor Co. v. Lenckos*, 84 Ill.2d 102, 116, 417 N.E.2d 1343, 1351 (1981) ("A unitary business operation is one in which there is a high degree of interrelationship and interdependence" between a parent and its subsidiary).

Second, the IDR asserts Envirodyne undertook a significant change in its operational procedures in 1980 that resulted in a lack of centralized management over Wisconsin Steel. In support, the IDR contends Michael Lyon exercised control over all final decisions at Wisconsin Steel in 1980 when he became Wisconsin Steel's president. The bankruptcy court determined Envirodyne's relationship with Wisconsin Steel was not substantially altered in 1988 and 1989. Although Lyon exercised control over final decisions, he continued to consult with key Envirodyne officers on significant decisions. Moreover, a number of factors that emerged during the Wisconsin Steel bankruptcy proceedings establish Envirodyne's continued exercise of strong central management and involvement. Envirodyne assumed liability for Wisconsin Steel's pension plans, an obligation it had not previously undertaken. Envirodyne and Wisconsin Steel shared office space,

9

and Envirodyne provided utilities, office services, tax preparation, and insurance coverage at no charge. Envirodyne assisted with the negotiation of the reorganization plan, and funded the plan in the amount of $2.7 million. Envirodyne's general counsel was primarily responsible for the reorganization plan. Thus, Wisconsin Steel's reliance on Envirodyne continued after 1980. Moreover, in *Central Utilities,* the court found a unitary business group despite the exercise of day-to-day control of operations by local managers of the subsidiaries. *Central Utilities,* 111 Ill.2d at 48, 488 N.E.2d at 990; *see also A.B. Dick,* 287 Ill. App. 3d at 238, 678 N.E.2d at 1106 ("the day-to-day management of the subsidiary need not be controlled by the parent"). Lyon's authority to make final decisions for Wisconsin Steel is insufficient to defeat the existence of a unitary business group. The IDR does not advance other evidence to demonstrate the purported change in the Envirodyne-Wisconsin Steel relationship. The bankruptcy court correctly concluded that Envirodyne's relationship with Wisconsin steel was not substantially altered in 1980 to preclude a unitary business group under § 1501(a)(27) of the Tax Act.

### III. Unitizing Factors Between Subsidiaries

In the alternative, the IDR asserts a lack of unitizing factors between Wisconsin Steel and Envirodyne's newly acquired subsidiaries after 1983 prevents the formation of one unitary business group. Instead, the IDR contends Envirodyne engaged in two unitary business groups – one group involving Wisconsin Steel and the other involving newly acquired post-1983 subsidiaries in the food packaging and service business. The bankruptcy court rejected the IDR's argument that Illinois law required unitizing factors between subsidiaries to establish a unitary business group under § 1501(a)(27).

In *Citizens Utilities,* the court found a unitary business group where the parent owned 24

utility subsidiaries, each operating in a different state. The court did not require each subsidiary to be fully integrated to find a unitary business. *Citizens Utilities*, 111 Ill.2d at 48-49, 488 N.E.2d at 991-92; *see also Container Corp.*, 463 U.S. at 166 (the unitary business principle can be applied to series of similar enterprises operating separately but linked by common managerial or operational resources); *Borden*, 295 Ill. App. 3d at 1003, 692 N.E.2d at 1337-38 (unitary business found between Borden and Pepsi subsidiaries in the absence of evidence that Pepsi subsidiaries were interrelated with other Borden subsidiaries).

The IDR concedes no Illinois court has found an interrelationship among all subsidiaries necessary to find a unitary business group. Indeed, the IDR's unsupported assertion defies the plain language of § 1501(a)(27). The Tax Act provides that strong centralized management exists where authority over various activities is not left to each member. 35 ILCS § 5/1501(a)(27). The key requirement is that "the parent corporation enjoyed actual, centralized control" over the group. *Citizens Utilities*, 111 Ill.2d at 51, 488 N.E.2d at 992. Thus, the critical link for establishment of a unitary business group is central control and management, not an interrelationship between every entity in the business group. The Illinois Administrative Code's example of a unitary business further supports this conclusion:

> Corporation K was involved in the manufacture and sale of canned goods. Corporation K acquired corporations L, M, and N that sold different product lines. The subsidiaries were relatively autonomous in their day-to-day operation, and "[t]here was no significant flow of goods between any of the corporations." Corporation K provided centralized warehousing, accounting, financing, and inventory functions for the subsidiaries. Corporation K and its subsidiaries are engaged in a unitary business.

86 Ill. Adm. Code § 100.3010(c)(4)(D). This scenario emphasizes centralized control, and provides for the formation of a unitary business without reference to unitizing factors between the

11

subsidiaries. Moreover, the IDR's regulations define a unitary business as follows : "when the trade or business activities of each of the other persons are integrated with, dependent upon, or contribute to the activities of *one or more* of the other persons." 86 Ill. Adm. Code. § 100.3010(c)(1) (emphasis added). The plain language of that section allows for a unitary business group where one corporation is dependent upon another. There is no support in Illinois law for the IDR's assertion that Wisconsin Steel must have unitizing factors with all Envirodyne subsidiaries to constitute a unitary business group.

## CONCLUSION

The bankruptcy court's memorandum opinion and order denying the IDR's claim to additional tax liabilities, interest, and penalties against debtors is affirmed.

February 13, 2002

ENTER:

Suzanne B. Conlon
United States District Judge